UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONALD C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:22-cv-00890-TAB-TWP |
| | ) |
| KILOLO KIJAKAZI Acting Commissioner of Social Security, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Donald C. appeals the Social Security Administration's denial of his application for disability insurance benefits. Plaintiff claims that the Administrative Law Judge erroneously substituted her own medical judgment for that of the state agency reviewing physician who found Plaintiff had "right eye blindness." Plaintiff argues the ALJ found Plaintiff capable of a residual functional capacity not supported by substantial evidence or the relevant legal standards when she concluded that Plaintiff was capable of occasional use of depth perception on the right side. Although the state agency physician opined that Plaintiff had limited depth perception in his right eye, the ALJ did not seek clarification from a medical expert as to what sort of limitations would be necessary for a person with right eye blindness. The Court agrees with Plaintiff that the ALJ used her own judgment to discount the physician's opinion with Plaintiff's hearing testimony and failed to build a logical bridge between the evidence and her conclusion that Plaintiff remained capable of such use with his right eye. Thus, Plaintiff's request for remand [Filing No. 14] is granted.

**II.     Background**

On August 1, 2019, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on December 31, 2018. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2018, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: decreased depth perception right eye status post retinal and macular hole repairs and major depressive disorder. [Filing No. 12-2, at ECF p. 25.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or his remaining ability to work despite his limitations. The ALJ concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [N]ever use ladders, ropes, or scaffolds; must avoid all dangerous, moving machinery and work at unprotected heights, but is capable of avoiding ordinary workplace hazards; occasional use of depth perception on right side; no commercial driving; occasional contact with supervisors and co-workers; and brief and superficial interaction with the general public.

[Filing No. 12-2, at ECF p. 29.] At step four, the ALJ concluded that Plaintiff could not perform any past relevant work. Finally, at step five, considering Plaintiff's age, education work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the

national economy that Plaintiff can perform, including hand packer, laundry worker, and hospital cleaner[1]. Accordingly, the ALJ concluded that Plaintiff was not disabled.

**III. Discussion**

Plaintiff's sole argument on appeal is that the ALJ failed to provide a logical, evidence-based rationale for her conclusion that Plaintiff could occasionally use depth perception on his right side. [Filing No. 14, at ECF p. 6.] Plaintiff argues that the ALJ erred by substituting her own medical judgment for that of state agency reviewing physician Dr. D. Lee, who found Plaintiff suffered from right eye blindness. Dr. Lee stated that "it is medically reasonable to have an RFC with visual limitations due to his right eye blindness." [Filing No. 12-3, at ECF p. 32.] He also noted that Plaintiff's field of vision is limited "due to his right eye blindness." [Filing No. 12-3, at ECF p. 32.] The ALJ did not specifically mention this part of Dr. Lee's opinion, but rather noted that Dr. Lee opined Plaintiff "has limited depth perception in his right eye and limited field of vision in the right eye." [Filing No. 12-2, at ECF p. 33.] The ALJ also referenced that Dr. Lee opined that Plaintiff had no exertional, postural, manipulative, communicative, or environmental limitations. The ALJ found Dr. Lee's opinion persuasive but concluded that subsequent evidence "including hearing testimony" supported a maximum RFC with only occasional use of depth perception on right and accommodating environmental limitations, given Plaintiff's demonstrated activities and his self-reports that his vision had "improved." [Filing No. 12-2, at ECF p. 33.]

The Court reviews the challenged decision to determine whether the ALJ's factual findings are supported by substantial evidence. *See, e.g., Biestek v. Berryhill*, __ U.S. __, __,

---

[1] The parties acknowledge that the ALJ omitted the hospital cleaner position from her decision, but presume it was just a scrivener's error because the vocational expert testified that an individual with the RFC the ALJ assessed to Plaintiff could perform this job.

139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions."  *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

      Plaintiff argues that a plain reading of the ALJ's decision indicates that the only way the ALJ could conclude that someone deemed to have right eye blindness still retained the ability to use that eye for depth perception occasionally would be by relying on her own medical judgment.  [Filing No. 14, at ECF p. 7.]  Plaintiff further argues that the ALJ was required to provide a good explanation for departing from the agency's own examining physician's opinion, but the ALJ failed to provide even a minimally logical and accurate rationale for this departure, let alone a "good" explanation for doing so.  [Filing No. 14, at ECF p. 10.]  The Commissioner counters that the ALJ reasonably relied on Dr. Lee's medical findings, and that substantial evidence supported the ALJ's determination that Plaintiff had the RFC to perform work at all exertional levels with additional restrictions to account for his vision problems.  The Commissioner contends that the ALJ actually assessed a more restrictive RFC than was recommended by any physician, so remand is not warranted, citing *Gedatus*, 994 F.3d at 904 ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or nay other limits, greater than those the ALJ set.").

4

When addressing Dr. Lee's opinion, the Commissioner ignored Dr. Lee's statements regarding right eye blindness and discounted his opinion almost entirely by relying on Plaintiff's hearing testimony.  While the Commissioner makes a fair point that Dr. Lee did not explicitly set out any additional necessary visual limitations, the Court cannot discern how the ALJ supported the conclusion that Plaintiff remained capable of occasional use of depth perception on the right side.  Occasional use would indicate that Plaintiff remained capable of engaging in depth perception on his right side for more than two hours in an eight-hour day.  *See* S.S.R. 83-10.  In addition, the ALJ found no field of vision limitations.  This contradicts Dr. Lee's opinion, who found Plaintiff had right eye blindness, limited depth perception on the right side, and limited field of vision on the right side.  The Court simply cannot determine whether the ALJ properly evaluated this evidence; the logical bridge between the Commissioner's conclusion and the evidence is missing.  *Gedatus*, 994 F.3d at 900.

Plaintiff and the Commissioner disagree on the meaning behind the use of various words in Dr. Lee's opinion—particularly, "blindness."  Plaintiff argues that Dr. Lee's opinion of "right eye blindness" implies "a total limitation in the right eye as it is commonly understood in the common parlance."  [Filing No. 14, at ECF p. 8.]  Plaintiff further notes that the record indicates Plaintiff could not see out of his right eye, as visual acuity measurements most recently fluctuated between 20/250 and 20/160.  [Filing No. 12-7, at ECF p. 173, 201, 295, and 299.]  In contrast, the Commissioner argues that "there is no indication in Dr. Lee's finding that he intended to use blindness in the 'common parlance.' "  [Filing No. 17, at ECF p. 7.]  The Commissioner argues that Dr. Lee did not explain what he meant by right eye blindness, and that the only way to discern what he meant is to consider the restrictions in his administrative finding, which did not suggest total limitation of the right eye.

5

Plaintiff acknowledges that Dr. Lee's opinion regarding Plaintiff's depth perception and field of vision is somewhat vague.  [Filing No. 14, at ECF p. 8.]  However, Plaintiff contends this further supports the ALJ's need to seek an additional medical expert to clarify the questions raised by Dr. Lee's opinion.  As Plaintiff notes in reply, "[w]hile Plaintiff and [the] Commissioner can argue over what the reviewing physician intended in declaring the aforementioned limitations, neither party has any medical qualification to speak with authority on the subject."  [Filing No. 20, at ECF p. 2.]  The Court is not in any stronger position than the parties to posture on what Dr. Lee intended to relay with his word choice in his opinion.  But there is enough ambiguity and potentially harmful impact that remand is necessary for the ALJ to seek clarity on Dr. Lee's opinion or more thoroughly address reasons for discounting it.

The Commissioner accuses Plaintiff of ignoring his own testimony regarding improvements in Plaintiff's depth perception.  [Filing No. 17, at ECF p. 9.]  Yet a closer look at Plaintiff's testimony provides nothing more than additional ambiguity.  Plaintiff testified regarding the stress of doing work with his vision issues, stating: "And I was stepping off of stuff and I was twisting my back and everything else because of my depth perception in which it's gotten a little better.  But they said I'll never have it all back."  [Filing No. 12-2, at ECF p. 53.]  A short time later during the same hearing, the ALJ stated: "And let me see here, you said that you had some improvement—excuse me—in the depth perception in your eye but you still have some limitations on the right.  Correct?"  Plaintiff responded, "Correct."  [Filing No. 12-2, at ECF p. 57.]  Plaintiff argues that the ALJ relied on the latter testimony to support her RFC, but this testimony does not establish that Plaintiff can adequately perceive depth from his right eye for more than two hours of an eight-hour workday.  The Commissioner argues that the Court should reject Plaintiff's attempts to frame this questioning "as anything other than what it was."

6

[Filing No. 17, at ECF p. 9.]  While the Court cannot re-weigh the evidence, Plaintiff correctly notes that this testimony does not clearly indicate whether Plaintiff was referring to his left or right eye.  Nor is it clear how this testimony supports the ALJ concluding that Plaintiff had improved to the extent that he was now capable of engaging in activities requiring depth perception for more than two hours of an eight-hour workday.  It is simply not evident which eye Plaintiff is referencing in the first statement, and in the second statement Plaintiff seems to be agreeing he still has limitations on the right.  This testimony lacks detail and does not offset the medical opinion of Dr. Lee.[2]

Moreover, Plaintiff persuasively argues that the ALJ's departure from Dr. Lee's opinion without proper explanation caused him significant harm.  Plaintiff was of advanced age throughout the relevant adjudicatory period and had a past relevant work history that exclusively included "heavy" exertion work.  Thus, if the ALJ had concluded that Plaintiff could not perform any medium or heavy jobs in the national economy, that most likely would have resulted in a conclusion of disability under the Social Security guidelines.  [Filing No. 14., at ECF p. 11-12.]  Plaintiff notes that the jobs the ALJ concluded Plaintiff could perform, including hand packager, laundry worker, and hospital cleaner, required either level three or level four motor coordination.  If the ALJ had assessed Plaintiff as having right eye blindness with an inability to perceive depth and a lack of visual field, it is reasonable to presume that this could have precluded Plaintiff from performing the only jobs in the national economy the ALJ concluded he could perform.  Thus,

---

[2] Less persuasive is Plaintiff's argument regarding the ALJ's treatment of his driving.  The ALJ found that Plaintiff should not engage in commercial driving but referenced his "demonstrated abilities" including driving across the country while on a vacation in recent months.  [Filing No. 12-2, at ECF p. 31, 33.]  It was reasonable for the ALJ to consider Plaintiff's ability to drive recreationally in relation to his allegations regarding impaired vision.  However, questions remain over the ALJ's treatment of Dr. Lee's opinion, so this does not change the Court's conclusion that remand is necessary.

7

remand is necessary. On remand, the ALJ could choose to adopt Dr. Lee's opinion as given or potentially seek another medical expert's opinion of what 20/160 vision in the right eye indicated as far as Plaintiff's maximum visual capacity.

### IV.   Conclusion

For these reasons, the Court grants Plaintiff's request for remand. [Filing No. 14.] The Commissioner's decision is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings and consideration consistent with this opinion.

Date: 1/13/2023

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email